James Robins, John A. Hamilton, James Dripps, Smith Pettit and John A. Hamilton, Administrator of the estate of James L. Barbour, deceased, Appellants, *v.* Charles W. Mayer and Francis Douglas Heckman, Executors of the estate of Archimedes Heckman, deceased, Rachel A. Heckman and Francis Douglas Heckman.

*Mortgage—Deed of trust—Sale of mortgaged premises.*

In an action against executors to recover a balance alleged to be due on a promissory note given by the testator and secured by a deed of trust of a large number of lots, a verdict and judgment for the defendants will be sustained where it appears that there had been a lumping sale of the lots under the plaintiffs' direction by the trustee; that the lots had been sold for an inadequate price; that no notice of the time or place of sale had been given to the defendants, and that plaintiffs had sought to force upon defendants a credit for an amount named, without accounting for or explaining said credit.

Argued March 29, 1899. Appeal, No. 40, Jan. T., 1899, by plaintiffs, from judgment of C. P. No. 3, Phila. Co., Dec. T., 1895, No. 600, on verdict for defendants. Before GREEN, MCCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Assumpsit to recover the difference between three promissory notes and the sum admitted to have been received by plaintiffs for the sale of certain collaterals.

At the trial it appeared that in July, 1890, the plaintiffs sold to Archimedes Heckman a lot of ground in Washington, D. C., for the sum of $125,000. Heckman paid $25,000 in cash, and for the balance gave his four notes for $25,000 each, maturing in one, two, three and four years. These notes were secured by a deed of trust from Heckman to Eugene Carusi and F. H. Smith, trustees, which provided, inter alia, as follows : " The right and privilege is hereby reserved to the said Archimedes Heckman, his heirs and assigns, upon the payment by him or them of a sum or sums of money on account of said notes and at any time before the maturity thereof equal to eighty cents per square foot of any lot or lots in said square according to any subdivision thereof that shall hereafter be made and recorded according to law in the office of the surveyor of said city of Washington, to demand and receive from time to time from the parties hereto of the second part, or the survivor of them, a deed of release of such lot or lots from the operation of this deed of trust." It further provided that in case of default in the payment of principal or interest then the trustees could sell the property at public sale " upon such terms and conditions, at such time and place, and after such previous advertisement, as the parties of the second part, their heirs or the trustee acting in the execution of this trust shall deem advantageous and proper."

There was no provision in the deed authorizing the plaintiffs to become the purchasers at the sale to be so made by the trustees under plaintiffs' directions.

In July, 1891, the first note of $25,000 matured. Heckman paid $15,000 on account, and paid the remaining $10,000 in December, 1891. He never demanded or requested any release of any lot or lots by reason of his payment. In June, 1892, Heckman died. Prior to his death he had improved a certain portion of the lot by erecting buildings thereon at a cost of $50,000. In February, 1893, his son and heir, Francis D. Heckman, sold the said square of ground to Deeble & Davis, of Washington, under and subject to the payment of the then three outstanding notes of $25,000 each, making $75,000 in all, of which Deeble & Davis assumed the payment.

On April 20, 1893, the plaintiffs and their trustees, without notice to defendants, by deed to Deeble & Davis, released from

the lien of the outstanding $75,000 of notes all the improved portion of the block of ground embracing the $50,000 of buildings, erected by the decedent Heckman, and consisting of twenty-six lots with houses thereon. This conveyance purported to be without any consideration from Deeble & Davis, and to be a deed of release on account of Heckman having paid the first note of $25,000 after its maturity over a year and a half prior to this time.

In 1895, owing to the default by Deeble & Davis in the payment of the notes at maturity, the plaintiffs, through their trustees, directed all of the property which had not been released by said plaintiffs to Deeble & Davis to be exposed to sale. No notice was given to the defendants that there had been any default in the obligations. The property, some years before, had been subdivided into city lots, and was bounded by four streets, viz: E, F, First and Second, with Heckman street running through the center. The plaintiffs and the trustees ignored the subdivision, and 120 city lots were exposed in a lumping sale as one property, and bought in bulk by the plaintiffs for the sum of $50,000.

The court charged in part as follows :

The first of the series of notes was paid by Archimedes Heckman, part at maturity and the balance some months later, but no release of land was demanded by him of the trustees. Archimedes Heckman died in June, 1892. On March 14, 1893, Francis Douglas Heckman, describing himself in the deed as sole heir at law of Archimedes Heckman, conveyed to W. Riley Deeble and Benjamin P. Davis, as trustees, the whole of square No. 736, subject to a balance of $75,000 of the debt secured by the deed of trust of Archimedes Heckman to Carusi and Smith. This deed, in my opinion, passed to the vendees, Deeble & Davis, trustees, the right to demand and to receive from Carusi and Smith, trustees, a deed of release of lots at the rate of eighty cents per square foot, which would amount in total value to $25,000, being the amount of the note paid in his lifetime by Archimedes Heckman. In the deed of July 11, 1890, Archimedes Heckman and wife to Carusi and Smith, this right and privilege is reserved to the said Archimedes Heckman, his heirs and assigns, and passed to Deeble & Davis under the deed of F. D. Heckman to

Deeble & Davis of March 14, 1893. Acting under this right, Deeble & Davis did demand such a deed of release, and received it, the deed being dated April 20, 1893. This deed was joined in by John A. Hamilton, treasurer, and J. Tome. It has been earnestly and ably contended by the counsel for the defendants that, this deed of release having been executed without the consent of Heckman or his legal representatives, such a release is a bar to plaintiff's recovery against Heckman's estate of such part of said debt as might have been realized from the sale of the property so released, and I have been referred to several cases in support of that view, especially to certain English cases, and others decided in the courts of Massachusetts and Connecticut. The case of Savings Bank v. Thayer is reported in 136 Mass. 459. The opinion of the court was delivered by DEVENS, J. The principle announced was, " That if the mortgagee releases or conveys any of the mortgaged property, except according to the terms or under authority of the mortgage, there remains no personal liability of the mortgagor for the debt which the mortgage was made to secure." The case is interesting and well reasoned, but I think the case at bar comes within the exceptions mentioned in the opinion of Judge DEVENS, as I am of the opinion, and so hold, that the release was according to the terms and under the authority of the trust deed of Archimedes Heckman to Carusi and Smith. That trust deed covenanted " That the right and privilege is hereby reserved to Archimedes Heckman, his heirs and assigns, upon the payment by him or them of a sum or sums of money, on account of the said notes, and at any time before the maturity thereof," and I am of the opinion that Archimedes Heckman at any time before the maturity of the whole debt, or to be more exact, before the maturity of the last note, could have demanded a release, and that the benefit of this covenant passed to Deeble & Davis, under the deed of F. D. Heckman. I, therefore, decline the defendants' points, which are numbered one, two, three and four. I have not been referred to any Pennsylvania cases upon this branch of the cause, nor have I, in the brief time at my disposal, been able to find any authority which exactly rules these points. But the view expressed in my general charge, will give reasons sufficiently for declining these points.

The second branch of the defense is that the plaintiffs, hav-

ing admittedly received collateral security for the payment of
the notes sued upon, must prove the disposition which they
made of the collateral before they can recover in this action,
and that, as the plaintiffs seek to compel the defendants to ac-
cept an alleged credit of $48,755.55 on account of alleged dis-
position of the collateral, they must, therefore, prove their
account amounting to $48,755.55. The general rule of law is
that where collateral security is put under the dominion of the
creditor, he is to make his claim out of it, if he can. His du-
ties in respect to it are active. He is to employ reasonable dili-
gence in collecting money on the securities, and applying it to
the principal debt, and the rule is undoubtedly that the holder
of collaterals is bound to employ reasonable care, skill and dili-
gence in regard to them, and in regard to rendering them as
effectual as possible for the purposes intended. The evidence
in this case is within narrow limits upon the question of the
amount of care, skill and diligence employed by the trustees,
Carusi and Smith, in endeavoring to collect the debt out of the
land.

The plaintiffs, in their statement of claim, give credit to the
defendants for a certain amount which they assert in their state-
ment of claim was the amount realized from the sale of certain
real estate held by them as collateral security for the payment
of the said notes. The defendants have offered no testimony
to show that the sale was not a bona fide one, that is, was made
in good faith, and that the price realized was not the fair market
price of the land, except the testimony of Mr. Beale, who testi-
fied, as I recollect, that the value of the land left, after deduct-
ing the value of the land and improvements which were released,
was somewhere in the neighborhood of $90,000. There is tes-
timony that the land in 1893 was of a much higher value than
the amount realized in 1895. In rebuttal this morning, under
objection and exception, the plaintiffs presented the testimony
of Mr. James F. Barbour. His testimony is so fresh in your
minds that I shall not further refer to it. [The evidence, how-
ever, such as it is, I feel it my duty to submit to you. The
presumption of law is that every man does his duty, until the con-
trary is proved. The presumption is in favor of the trustees, but
this presumption, like every other presumption, may be rebutted.
You have heard the testimony of the witnesses, their examination

and cross-examination. I shall leave to you whether, upon the whole evidence, you are satisfied that the trustees used care, skill and diligence in the sale of the real estate, and whether the sale was bona fide, that is in good faith. If they did, they are entitled to recover the amount of their claim with interest, against Mayer and Heckman, as executors of the estate of Archimedes Heckman. If they did not, your verdict should be for the defendants.] [7] [Your verdict must be in favor of Francis Douglas Heckman, who was sued individually. No facts are proved which render him individually liable in this action, and you will render a verdict for him individually.] [4]

Verdict and judgment for defendants. Plaintiffs appealed.

*Errors assigned* among others were (4, 7) above instructions, quoting them.

*William B. Linn* and *C. Berkeley Taylor*, with them *W. H. Addicks*, for appellants.—Binding instructions to find for the plaintiffs for the full amount of their claim should have been given. There was no evidence to go to the jury: Sherwood v. Saxton, 63 Mo. 78; Williamson v. Stone, 128 Ill. 132; Littlerock, etc., Ry. Co. v. Huntingdon, 120 U. S. 160; Holland v. Kindregan, 155 Pa. 156; Horn v. Hutchinson, 163 Pa. 435; McMurtrie v. Black, 180 Pa. 64; First Nat. Bank v. Wierbach, 106 Pa. 37; Gwynne v. Heaton, 1 Bro. Ch. Cases, 9; Carpenter v. Robinson, 1 Holmes (U. S.), 67; Stroup v. Raymond, 41 W. N. C. 227; Carson v. Ambrose, 183 Pa. 88; Stewart v. Montgomery, 23 Pa. 410; Smith v. Black, 115 U. S. 308; Bloom v. Van Rensaeller, 15 Ill. 504; Blythe v. Richards, 10 S. & R. 262; Miller v. Cook, L. R. 10 Eq. Cases, 647; Mowry v. Sanborn, 68 N. Y. 153; Hoodless v. Reid, 112 Ill. 105; Irish v. College, 126 Ill. 474; Ritchie v. Judd, 137 Ill. 453; Manning v. Elliott, 92 N. C. 48; Carver v. Brady, 104 N. C. 219; Dryden v. Stephen, 19 W. Va. 1; Burke v. Adair, 23 W. Va. 139; Tartt v. Clayton, 109 Ill. 579; Singleton v. Scott, 11 Iowa, 589; Carter v. Abshire, 48 Mo. 300.

*A. T. Freedley*, with him *Franklin Swayne*, for appellees.— The plaintiffs cannot, after lessening the value of the collateral by releasing all the improved portion thereof, without notice to

defendants, arbitrarily fix the value of the residue at the amount of their bid at a lumping sale of 120 city lots ; said sale being made under plaintiffs' directions, without notice to defendants, and not being a judicial sale, and without opportunity being given to defendants to redeem the collateral by paying the debt; and they cannot then hold the debtor for the deficiency between the price which they have thus fixed by bidding at said sale and the amount of the original obligation for which the collateral was held as security: Musser v. Stauffer, 178 Pa. 105; Bennett v. Cadwell, 70 Pa. 253; Carbarger v. Seeger, 17 Pa. 514; Rowley v. Brown, 1 Binney, 61; Ryerson v. Nicholson, 2 Yeates, 516; Grim v. Reinbold, 148 Pa. 446; Fox v. Mackreth, 1 Leading Cases in Eq. 115; Slingluff v. Eckel, 24 Pa. 472; Sitgreaves v. Bank, 49 Pa. 363; Story on Bailments, sec. 319; Schouler on Bailments, 210; Hestonville R. R. Co. v. Shields, 3 Brewster's Rep. 259; Farrar v. Farrars, Law Rep. 40 Ch. Div. 395; Conyngham's App., 57 Pa. 474; Dillar v. Brubaker, 52 Pa. 498 ; Davis v. Funk, 39 Pa. 243; Townsend Savings Bank v. Munson, 47 Conn. 390 ; 1 Jones on Mortgages, sec. 678; Muirhead v. Kirkpatrick, 21 Pa. 241; McQueen's App., 104 Pa. 595; Girard Marine Ins. Co. v. Marr, 46 Pa. 507; Brown v. Title Co., 174 Pa. 460; Bank v. Trexler, 174 Pa. 503 ; Beale v. Bank, 5 Watts, 529; Atherton v. Atherton, 2 Pa. 112; Cobwell v. Rockwell, 11 W. N. C. 552; Stewart v. Montgomery, 23 Pa. 410 ; Stuart v. Bigler, 98 Pa. 80.

PER CURIAM, April 24, 1899 :

We discover no error in this record. We think the learned court below was entirely correct in the interpretation given to the deed of trust and its several provisions, for the reasons stated in the charge. The testimony fairly raised the question of due diligence on the part of the trustees in endeavoring to collect the debt out of the land, and that question was properly submitted to the jury who found for the defendants.

The assignments of error are all dismissed.

**Judgment affirmed.**